## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **WILLIAM N. DAVIS,** | : | Case No. 01:12 CV 2242 |
| Petitioner, | : | |
| vs. | : | |
| **CHRISTOPHER LAROSE, WARDEN,** | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Respondent. | : | |

### I. INTRODUCTION

This case was automatically referred to the undersigned Magistrate Judge for report and recommendation pursuant to 72.2(b)(2) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES.  Pending are the Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, Respondent's Return of Writ and Petitioner's Traverse (Docket Nos. 9, 10 and 11).  For the reasons set forth below, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus.

### II. FACTUAL BACKGROUND.

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  28 U. S. C. § 2254(d)(1) (Thomson Reuters 2013).

The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.  *Hardaway v. Withrow,* 305 F.3d 558, 563 (6th Cir. 2002) (*citing* 28 U.S.C. § 2254(e)(1)).  This statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records.  *Id.* (*citing Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir.2001) (*citing Sumner v. Mata*, 101 S.Ct. 764, 768-769 (1981)).

The findings of fact that follow were made by the Supreme Court of Ohio.  A succinct recitation of the uncontroverted facts follows.

> Based on the trial testimony of D.T.1 and D.T.2, the record reveals that in 1999, Petitioner began to sexually abuse D.T.1, the nine-year-old niece of his wife, Alberta Davis, by fondling her.  On another occasion, Davis digitally penetrated her vagina.  After that incident, D.T.1's mother, Deshawn Treadwell, noticed blood on the child's underwear, but assumed that D.T.1 had begun menstruating.  At that time, D.T.1 did not reveal the abuse.
>
> When she was 10 or 11 years old, D.T.1 visited her aunt Ms. Davis to help her with work around the house and with shopping.  While Ms. Davis was occupied in the kitchen, Petitioner engaged in sexual intercourse with D.T.1 in the bedroom.  On more occasions over the next several years, he raped and sexually abused D.T.1 when she visited her aunt, with the most recent rape occurring in 2005 when D.T.1 was 15 years old.  Around the time that Petitioner ended the sexual abuse of D.T.1, however, he fondled D.T.1's younger sister, D.T.2, on two separate occasions.
>
> In September 2006, D.T.1 told her mother that Petitioner had raped her.  Treadwell then contacted the police.
>
> *State v. Davis,* 127 Ohio St.3d 268, 269-270, 939 N.E.2d 147, 149-150 (2010)

### III. PROCEDURAL BACKGROUND.

**A.  INDICTMENT.**

The jurors of the Grand Jury of the State of Ohio, Cuyahoga County, during the May 2007-term, returned a thirty-one-count indictment as to Petitioner:

Counts 1-9     Rape of a person who is less than thirteen years of age, a violation of
               OHIO REV. CODE § 2907.02(A)(1)(b), with sexually violent predator
               specification, defined in OHIO REV. CODE § 2941.148.

Counts 10-28   Rape by force or threat of force, a violation of OHIO REV. CODE §
               2907.02(A)(2), with a sexually violent predator specification.

Counts 29-31   Gross sexual imposition (GSI), a violation of OHIO REV. CODE §
               2907.05(A)(4).

(Docket No. 9-1, pp. 2-31 of 31).

**B.     THE JURY TRIAL.**

Petitioner, through counsel, entered a plea of not guilty to the indictment and the case proceeded to trial.  On February 21, 2008, the jury was impaneled and sworn with no alternates. After one juror disclosed that she had been the victim of an alleged assault the night before, the entire jury was dismissed and the Court declared a mistrial.  A second jury was impaneled (Docket No. 9-2, p. 1of 1).

The court rescheduled the trial and on March 3, 2008, the trial proceeded.  Petitioner, through counsel, filed a motion to dismiss, arguing that discharging the first jury and impaneling a second jury put him twice in jeopardy for the same offense.  The court denied the motion (Docket No. 9-3, pp. 1-5 of 5).

During direct examination, Ms. Davis revealed that she and Petitioner had decided to move to Columbus after the allegations of sexual abuse surfaced, and she admitted that Petitioner had left a job in Cleveland without having a job in Columbus.  In addition, the prosecutor asked Ma. Davis whether she had intended to speak with her younger niece, D.T.2, about these allegations. When she denied wanting to talk to D.T.2, the prosecutor asked her to affirm that she would not lie to the jury.  At that point, the prosecutor played a recorded telephone conversation between Ms. Davis and Petitioner during which she agreed to record a conversation with D.T.2.  The state characterized this effort as part of a plan to discredit the

victim and exonerate Petitioner.  When Ms. Davis testified that she had wanted to tape D.T.2 only to help her (Ms. Davis) to remember the conversation, the state moved to treat her as a hostile witness, asserting that she had schemed with Petitioner to record conversations with the victim in order to undermine the child's testimony.  The state then elicited admissions that she had lied to the jury about not wanting to speak to D.T.2 and that she had told Petitioner that they could move somewhere where he could avoid being around children.  She also admitted that Petitioner had suggested "getting someone to whip [D.T.1's] ass."  *State v. Davis*, 127 Ohio St. 3d at 270, 939 N. E. 2d at 149-150.

When the state rested its case, the court dismissed eight rape counts charged in the indictment. Defense counsel did not recall Ms. Davis to testify, and Petitioner chose not to testify.  The State of Ohio moved to amend Count 14 to gross sexual imposition, a lessor included offense of the original charge of rape.  The motion was unopposed and granted on March 7, 2008 (Docket No. 9-4, p. 1of 1).

C.    **THE VERDICT.**

The jury returned a verdict on March 7, 2008:

(1)    Guilty of rape under Counts 1, 2, 3, 4, 5 and 6 of the indictment.
(2)    Guilty of rape under Counts 9, 10, 11, 12, 13, 15, 16, 17, 18, 19, 20, 21 and 24 of the indictment.
(3)    Guilty of GSI, the lessor included offense of rape, under Count 14 of the indictment.
(4)    Guilty of GSI as charged in Counts 29, 30 and 31 of the indictment.
(5)    Petitioner's motion for acquittal pursuant to OHIO CRIM. R. 29 was granted as to Counts 7, 9, 22, 23, 25, 26, 27, 28.
(6)    Petitioner was advised of post release control for five years.

(Docket No. 9-5, p. 1 of 1).

D.    **THE SENTENCE.**

On March 12, 2008, Judge Joan Synenberg imposed the following sentences:

(1)     LIFE on each of Counts 1, 2, 3, 4, 5 and 6, Counts 1, 2 and 3 to run concurrent; Counts 4, 5 and 6, concurrent and consecutive to Counts 1, 2 and 3.

(2)     Three years on Count 9, concurrent with Counts 1, 2 and 3.
(3)     Four years on Count 10, consecutive to Count 9.
(4)     Four years on Count 11, concurrent to Count 10, consecutive to Count 9.
(5)     Five years on Count 12, consecutive to Count 9, consecutive to Counts 10 and 11.
(6)     Six years on Count 13, consecutive to Counts 9, 10 and 11.
(7)     Eighteen months on Count 14, concurrent with all other counts.
(8)     Six years on Count 15, concurrent with Count 13.
(9)     Seven years on Count 16, consecutive to Count 15.
(10)    Seven years on Count 17, concurrent to Count 16.
(11)    Eight years on Count 18, consecutive to Count 17.
(12)    Eight years on Count 19, concurrent to Count 18, consecutive to Counts 9, 10, 11, 12, 13, 15, 16 and 17.
(13)    Nine years on Count 20, consecutive to Count 19.
(14)    Ten years on Count 21, consecutive to Count 20.
(15)    Ten years to live on Count 24, consecutive to all other sentences.
(16)    Four years on Counts 29, 30 and 31, consecutive to other sentences.
(17)    Post release control is part of this prison sentence for five years for the above felonies under OHIO REV. CODE § 2987.28.
(18)    Petitioner was registered as a Tier II Sex Offender.

(Docket No. 9-6, pp. 1-2 of 2).

E.     THE DIRECT APPEAL.

On April 22, 2008, Petitioner, by and through counsel, filed a notice of appeal (Docket No. 9, pp. 1-3 of 3).  In the brief on the merits filed on October 20, 2008, Petitioner asserted three assignments of error:

(1)     Petitioner was twice put in jeopardy for the same offenses, contrary to the Fifth Amendment to the United States Constitution and Article 1, Section 10 of the Ohio Constitution when after jeopardy having attached, the court denied Petitioner's request to try the case to a jury of eleven, dismissed the sworn panel and impaneled a second jury.
(2)     Petitioner was denied a fair trial when evidence was admitted that Petitioner had a general propensity to molest young females when he was on trial for rape and GSI of two of his nieces.
(3)     Petitioner was prejudiced by ineffective assistance of counsel.

(Docket No. 9-8, p. 2 of 77).

5

On February 19, 2009, the Court of Appeals of Ohio, Eighth District, *sua sponte*, remanded the case for disposition of the sexually violent predator specifications contained within Counts 1, 2, 3, 4, 5, 6, 9, 10, 11, 12, 13, 14 as amended, 15, 16, 17, 18, 19, 20, 21 and 24 of the indictment and for compliance with *State v. Baker*, 119 Ohio St. 3d 197, 2008-Ohio-3330, 897 N. E. 2d 163 (2008)[1] (Docket No. 9-10, p. 1 of 1).

The court of appeals rendered an opinion which was journalized on November 17, 2009:

(1)    Although Petitioner and the State consented to an 11-person jury, the court did not approve.  The appellate court could not state that the trial court abused its discretion in refusing to approve the request to proceed with an 11-person jury or determining there was a manifest necessity for a second jury.  Petitioner's first assignment of error was overruled.

(2)    *Sua sponte*, the court of appeals raised the issue of whether Petitioner's wife chose to testify voluntarily at trial.  The court was compelled to remand the case for a new trial given the mandates of *State v. Adamson*, 72 Ohio St. 3d 431, 434 (1995)[2] and *State v. Brown*, 115 Ohio St. 3d 55, 87 N. E.2d 858 (2007)[3].

(Docket No. 9-12, pp. 1-17 of 17).

The State of Ohio filed an application for reconsideration or in the alternative, a motion to certify conflict (Docket No. 9-13, pp. 1-10 of 10).  Petitioner, through counsel, filed a brief in opposition (Docket No. 9-14, pp. 1-5 of 5).  The court of appeals denied the motion in its entirety

---

[1]

In *Baker*, the Ohio Supreme Court determined that the judgment of conviction must include the sentence and the means of conviction, whether by plea, verdict, or finding by the court, to be a final appealable order under OHIO REV. CODE § 2505.02.

[2]

Under RULE 601(B), the testifying spouse must elect to testify against her spouse.  An election is "the choice of an alternative[;] [t]he internal, free, and spontaneous separation of one thing from another, without compulsion, consisting in intention and will." *Adamson*, 72 Ohio St. 3d at 434, 650 N. E.2d at 877 (*citing* BLACK'S LAW DICTIONARY 517 (5th ed. 1990)).  Thus, a spouse remains incompetent to testify until she makes a deliberate choice to testify, with knowledge of her right to refuse.  *Id.*

[3]

The holding in this case declared that the rule in *Adamson* was absolute.  Once it has been determined that a witness is married to the defendant, the trial court must instruct the witness on spousal competency and make a finding on the record that he or she voluntarily chose to testify.  Failure to do so constitutes reversible plain error. *Brown*, 115 Ohio St.3d at 67, 873 N.E.2d at 869 - 870.

(Docket No. 9-15, p. 1 of 1).

F.    **APPEAL TO THE SUPREME COURT OF OHIO**.

The State of Ohio filed a notice of appeal and memorandum in support of jurisdiction on

December 8, 2009.  The State listed two propositions of law:

    (1)    Where no objection is made to spousal testimony, a court's failure to inform the spouse of competency under EVID. R. 601 is not a structural error requiring reversal but may be noticed as plain error.

    (2)    The plain error standard requires a reviewing court to notice the unrecognized error and determine that but for the error, the outcome of the trial would be different.

(Docket No. 9-16, pp. 1-3 of 3; 9-17, pp. 1-29 of 29).

On December 11, 2009, Petitioner filed a notice of cross-appeal, alleging that the case

raised a substantial constitutional question involving a felony and was of public or great general

interest (Docket No. 9-18, pp. 1-3 of 3).    Petitioner filed a memorandum in support of

jurisdiction on December 22, 2009, supplementing the underlying memorandum in support of

jurisdiction with claims that:

    (1)    Trial counsel was ineffective for failing to object to the spousal testimony.

    (2)    In determining whether a trial judge exercised sound discretion in declaring a mistrial, a reviewing court must consider the factors such as whether the trial judge heard the opinions of the parties about the propriety of the mistrial; whether the judge considered alternatives to the mistrial and whether the trial judge acted deliberately instead of abruptly.

        a.    Double jeopardy and the manifest necessity doctrine.

    (3)    Petitioner's protection against double jeopardy was violated.

        a.    The trial judge did not hear the opinions of the parties regarding the propriety of the mistrial.

        b.    The trial judge did not consider the alternatives to a mistrial.

        c.    The trial judge acted abruptly.

(Docket No. 9-19, pp. 1-41 of 41).

The prosecutor filed a response on January 6, 2010, requesting that the Supreme Court of

Ohio not accept jurisdiction of Petitioner's proposition of law that there was error in the trial

7

court's decision to declare a mistrial (Docket No. 9-20, pp. 1-10 of 10).

On March 3, 2010, the Supreme Court of Ohio accepted the appeal, ordered transmittal of the transcript and issued a briefing schedule.  The Court denied leave to cross-appeal and dismissed the cross-appeal as not involving any substantial constitutional question (Docket No. 9-21, p. 1 of 1).

On May 17, 2010, the State filed its merit brief asserting two propositions of law:

(1)     Where no objection is made to spousal testimony, a court's failure to inform the spouse of competency under EVID. R. 601 is not structural error requiring reversal but may be noticed as plain error.
(2)     The plain error standard requires a reviewing court to notice unrecognized error and determine that but for the error, the outcome at trial would be different.

(Docket No. 9-22, pp. 1-85 of 85).

In Petitioner's merit brief filed on June 14, 2010, he argued that the propositions of law asserted by the State lacked merit (Docket No. 9-23, pp. 1-49 of 49).

The Supreme Court of Ohio decided on November 30, 2010, that the appellate court could not reverse a conviction for plain error based on the admission of spousal testimony in violation of EVID. R. 601(B) without conducting a plain error analysis.  The judgment of the appellate court was reversed and the cause was remanded for further proceedings consistent with the opinion (Docket No. 9-25, pp. 1-11 of 11).

G.     REMAND TO THE COURT OF APPEALS.

On May 19, 2011, the court of appeals affirmed the conviction and overruled all of Petitioner's assignments of error (Docket No. 9-26, pp. 1-19 of 19).

Petitioner filed an application for reconsideration on May 27, 2011 (Docket No. 9-27, pp. 1-64 of 64).  The State of Ohio opposed the application on June 1, 2011, and the court denied the motion on June 9, 2011 (Docket No. 9-28, pp. 1-10 of 10, 9-29, p. 1 of 1).

8

**H.**     **APPEAL TO THE SUPREME COURT OF OHIO.**

Petitioner filed an appeal from the May 19, 2011 judgment on June 24, 2011 (Docket No. 9-30, pp. 1-3 of 3).  In the memorandum in support of jurisdiction, Petitioner alleged a single proposition of law:

> When reviewing trial counsel's performance for ineffective assistance, federal and state precedent mandates that even when sufficient evidence exists to support a conviction, a substantial probability may still exist that the result of the proceeding would have been different.

(Docket No. 9-31, p. 2 of 56).

Counsel for the State of Ohio entered an appearance as counsel but entered a waiver of the right to file a response to the memorandum (Docket No. 9-32, p. 1 of 1).

Upon consideration of the jurisdictional memoranda filed in this case, the Supreme Court of Ohio denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question on October 5, 2011 (Docket No. 9-33, p. 1 of 1).

**6.**     **PETITION FOR WRIT OF HABEAS CORPUS.**

In the Petition for Writ of Habeas Corpus filed in this Court on September 4, 2012, Petitioner, *pro se*, asserted the sole claim:

The Cuyahoga County, Ohio Court of Appeals unreasonably applied *Strickland v. Washington*, 466 U. S. 668 (1984) when it turned the *Strickland* reasonable probability test into a test of [factual] sufficiency.

> *Supporting Facts:*
>
> In Petitioner's case, even with Ms. Davis' testimony, sufficient evidence would have still existed to convict Petitioner.  However, in many instances, when the State puts forth sufficient evidence, the jury still does not convict the defendant.  And that's because the jury's role is to judge the credibility of the witnesses.  In Petitioner's case, Ms. Davis' testimony prejudicially bolstered the victims' testimony, thereby creating a reasonable probability that had counsel objected,

9

and the jury not heard Ms. Davis' testimony, the outcome of Petitioner's trial would have been different.

Docket No. 1, p. 19 of 19).

## IV. THE STATUTE OF LIMITATIONS.

There is a one year statute of limitation that applies to the application of a writ of habeas corpus filed by a person in custody pursuant to a state court. *Keeling v. Warden, Lebanon Correctional Institution*, 673 F.3d 452, 458 (6th Cir. 2012) *cert. denied*, 133 S. Ct. 141 (2012) (*citing* 28 U.S.C. § 2244(d)(1)). This statute of limitations begins to run from the latest of:

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* at 458-459 (*citing* 28 U.S.C. § 2244(d)(1)(A)–(D)).

In this case, the decision affirming the conviction became final on the ninety first day after which Petitioner could no longer seek review by the Supreme Court of the United States. That date is January 2, 2012. Petitioner filed his instant Petition on September 4, 2012, approximately four months before the statute of limitations expired on January 2, 2013. Petitioner's Petition for Writ of Habeas Corpus was timely filed under 28 U.S.C. § 2244(d)(1)(A).

## V. APPLICABLE LAW REGARDING EXHAUSTION.

Under the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT (AEDPA), 28 U. S. C. § 2254, there are constraints placed on this federal habeas court before granting a timely filed

10

application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  *Doan v. Carter*, 548 F. 3d 449, 454 (6th Cir. 2008) *cert. denied,* 130 S. Ct. 366 (2009) (*citing Williams v. Taylor*, *supra,* 120 S. Ct. at 1523).  In effect, habeas review is limited to non-time barred claims for relief that have been fully exhausted in state court.  *Id.*

The federal habeas court is not a forum for trying facts and issues which a petitioner failed to pursue in state proceedings.  *Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000). When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state court remedies were still available or due to a state procedural rule that prevented the state courts from reaching the merits of the claim, that claim is procedurally defaulted.  *Id*. at 549-550.  A federal court will review a defaulted claim only if a petitioner "show[s] that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default."  *Id*. at 550.

Here, Petitioner was required to squarely present the specific issue which he alleged in the Petition for Writ of Habeas Corpus, describe operative facts and assert legal theories underlying his claims that he submitted in the state courts, either on direct review of the conviction or in a post-conviction attack.  Petitioner challenged the propriety of counsel's decisions in his direct appeal and his appeal to the Supreme Court of Ohio following remand of the state appellate court's opinion.  The issue has been fairly presented and exhausted and therefore not defaulted and subject to habeas review on the merits.

### V. Habeas Standard of Review.

A timely filed application for a writ of habeas corpus on behalf of a person in custody shall not be granted with respect to any claim adjudicated on the merits in state court

11

proceedings unless the adjudication of the claim—

      (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

      (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (Thomson Reuters 2013).

A decision is "contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Holder v. Palmer*, 588 F. 3d 328, 343 (6th Cir. 2009) (*citing Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000)). A state court decision will be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. *Id.* (*citing Williams*, 120 S.Ct. at 1523) (emphasis added).

A decision is an unreasonable application of clearly established federal law if it identifies the correct principle of law but unreasonably applies it. *Williams v. Coyle,* 260 F.3d 684, 699 (6th Cir. 2001) (*See Williams v. Taylor, supra*, 120 S. Ct. at 1519). "[A]n unreasonable application of federal law is different from an incorrect application of federal law . . . *Id.* Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. *Id.* Rather, that application must also be unreasonable." *Id.* (*citing Williams v. Taylor, supra*, 120 S.Ct. at 1521) (original emphasis)).

12

As a condition for obtaining habeas relief from the federal court, a state prisoner must show that the state court's decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011).  This bar is difficult to meet because "'habeas corpus is a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 99 S.Ct. 2781, 2795, n.5 (1979)).

### VII.  ANALYSIS OF PETITIONER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM.

There are two components to Petitioner's ineffective assistance of counsel claim.  First, the trial court erred in using the reasonable probability test in reviewing whether defense counsel's deficient performance prejudiced the outcome of Petitioner's trial.   Second, trial counsel's deficient performance prejudiced the outcome of Petitioner's trial.

### 1.  DID THE COURT UNREASONABLY APPLY *STRICKLAND V. WASHINGTON*?

This Court's habeas review of the Ohio Supreme Court decision is limited to determining whether the state court's decision construing the *Strickland* reasonable probability test as one of factual sufficiency and the trial counsel's failure to object to the state court's decision was contrary to or an unreasonable application of clearly established federal law as articulated by the Supreme Court of the United States.  Under the *Strickland* standard, a petitioner must show deficient performance and resulting prejudice  to prove ineffective assistance of counsel. *Durr v. Mitchell,* 487 F.3d 423, 435 (6ᵗʰ Cir. 2007) (*citing Strickland v. Washington*, 466 U.S. 668, 687 (1984)).   Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness, however, there is a strong presumption that counsel's performance was professionally reasonable. *Id.* (*citing Strickland*, at 688-89).   Prejudice

13

requires a showing that there is a reasonable probability that, *but for* counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.*  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id*. (*citing Strickland*, at 694).  Although this is a high burden for a petitioner to satisfy, it is even higher for a petitioner proceeding under the AEDPA.  *Id.*  That is, a petitioner must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance.  *Id.*  He must show that the state court of appeals applied *Strickland* to the facts of his case in an "objectively unreasonable manner."  *Id.* (*citing Bell v. Cone*, 535 U.S. 685, 698-99 (2002)).

In this case, Petitioner suggests that instead of using the reasonable probability test in reviewing whether Mrs. Davis' testimony prejudiced the outcome of the trial, the court of appeals used a "but-for" test, holding that the result of Petitioner's trial would have been the same regardless of counsel's failure to object.  The Supreme Court of Ohio directed the court of appeals to determine if Petitioner was prejudiced by ineffective assistance of counsel under the two-pronged test in *Strickland*.  With regard to deficient performance, the court addressed the element that required a showing that counsel's performance fell below an objective standard of reasonableness, linking counsel's performance under prevailing norms of the practice or sound strategy.  Under the second prong of the *Strickland* inquiry which judges prejudice and the likelihood of a different outcome, it was permissible for the court to consider whether Petitioner was denied a fair trial because of counsel's incompetence.  Stated differently, to the extent that the court was required to consider whether the result of the proceeding would have been different, it was reasonable to consider the probability that, "but for" counsel's unprofessional errors, Petitioner would have had a trial whose result was reliable (Docket No. 9-26, pp. 1-19 of 19).  Such consideration by the state court was neither contrary to, nor did it constitute an unreasonable

14

application of *Strickland.*

       **2.**        **WAS COUNSEL'S PERFORMANCE INEFFECTIVE?**

Petitioner contends that he received ineffective assistance of counsel in trial court when counsel failed to object to the admissibility of his spouse's testimony.  On review, reasoned judgment suggests that Ms. Davis' competence to testify should have been addressed and the jury given an instruction regarding the spousal privilege.  However, the Magistrate is not persuaded that counsel's failure to convince the trial court to overrule the prosecution's presentation of testimony from a witness hostile to the State constitutes ineffective assistance of counsel.  There are six bases on which the Magistrate finds support to deny Petitioner's ineffective assistance of counsel claim on the merits.

First, acknowledginging the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, the Magistrate does not second-guess counsel's performance but rather concludes that counsel's decision to refrain from objecting was perhaps a tactical decision to obtain Ms. Davis' testimony to the extent that it was exculpatory.  There is no evidence or argument to the contrary.

Second, once it was established that she was married to Petitioner, the trial court, not counsel, was responsible for instructing Ms. Davis as to spousal competency and then making a formal finding that she voluntarily chose to testify.  Under OHIO EVID. R. 601(B), competency determinations are the province of the trial judge.  *State v. Clark*, 71 Ohio St. 3d 466, 469, 644 N.E. 2d 331, 334 (1994).  The judge must take an active role in determining competency, and make an affirmative determination on the record that the spouse has elected to testify.  *Id.*

Third, there is no evidence that Ms. Davis refused to testify or that she was coerced into testifying.

15

Fourth, there is no evidence that Petitioner asserted the spousal privilege.

Fifth, Petitioner fails to make a sufficient showing that the identified omission was outside the wide range of professional competent assistance.  Similarly, Petitioner has not identified  a clear and unequivocal rule of law that was violated when counsel failed to object to the admissibility of Ms. Davis' testimony.

Sixth, to demonstrate the prejudice prong, Petitioner was required to show that counsel's failure to object had some conceivable effect on the outcome of the proceeding.  Ms. Davis' testimony was not the singularly most important testimony leading up to Petitioner's conviction. The testimony of D.T.1 and D.T.2 was critical to establishing the elements of rape.  Petitioner failed to present probative evidence which is persuasive that resolution of Ms. Davis' competency to testify would have resulted in an acquittal or that counsel's failure to object rendered the proceeding fundamentally unfair.

Guided by binding precedent set forth in *Strickland*, the Magistrate concludes that Petitioner's claim of ineffective assistance of counsel is not a basis for granting Petitioner habeas corpus relief.

## VI.  CONCLUSION.

For these reasons, the Magistrate recommends the Court deny the Petition for Writ of Habeas Corpus, deny the certificate of appealability and terminate the referral to the undersigned Magistrate Judge.


/s/Vernelis K. Armstrong
United States Magistrate Judge


Date:          April 1, 2013

16

## VII. NOTICE

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.